UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF NORTH CAROLINA

Civil Action, File Number 07-786

REVEREND DERRICK GOMEZ       )
                                                             )
      Plaintiff,             )
                                                             )
v.                                                  )          COMPLAINT
                                                             )
EVANGELICAL LUTHERAN       )
CHURCH IN AMERICA,            )
NORTH CAROLINA SYNOD,      )
REVEREND RICHARD A. MAGNUS, )
BISHOP LEONARD BOLICK, and    )
REVEREND PHILLIP TONNESEN   )
                                                             )
      Defendants.           )
                                                             )

COMES NOW the Plaintiff, Reverend Derrick Gomez, by and through his undersigned counsel, complaining of Defendants and alleging the following:

## BACKGROUND

1) Plaintiff, Reverend Derrick Gomez, is a citizen and resident of Alamance County, North Carolina.

2) Upon information and belief, the Evangelical Lutheran Church in America is a corporation with its headquarters in Chicago, Illinois.

3) Upon information and belief, the North Carolina Synod is a corporation with its headquarters in Salisbury, North Carolina.

4) Upon information and belief, Reverend Richard A. Magnus is a resident of Lake County, Illinois.

5) Upon information and belief, Reverend Leonard Bolick is a resident of Rowan County, North Carolina.

6) Upon information and belief, Reverend Phillip Tonnesen is a resident of Rowan County, North Carolina.

7) This action arises under Title VII.

8) Defendant Magnus is and was at all times relevant to the allegations of this Complaint employed as the Executive Director of the Evangelical Outreach and Congregational Mission of the Evangelical Lutheran Church in America.

9) Defendant Bolick is and was at all times relevant to the allegations of this Complaint employed as the Bishop of the North Carolina Synod.

10) Defendant Tonnesen is and was at all times relevant to the allegations of this Complaint employed as the Assistant to the Bishop of the North Carolina Synod.

11) Plaintiff has worked for The Evangelical Lutheran Church in America since 1981, and in the capacity of Mission Director since 2002.

12) Though ordained, the Plaintiff was not required to be so in order to work as the Mission Director.

13) Plaintiff served as Mission Director for the New England Synod from 2002 until 2004.

14) During this time as Mission Director for the New England Synod, Plaintiff consistently performed his job satisfactorily, and he was not subjected to discriminatory actions nor a hostile work environment and did not suffer from emotional distress.

15) In 2004, Plaintiff requested a transfer to the North Carolina Synod from the New England Synod.

16) Though the Plaintiff had been informed of his appointment to the New England Synod the day following his interview, he was not told of his appointment to the North Carolina Synod for several weeks due to Defendant Bolick's comment that the Plaintiff would not be able to work with white pastors.

17) As Mission Director for the North Carolina Synod, Plaintiff's job responsibilities were the same as they were when he served as Mission Director for the New England Synod.

18) In 2005, soon after his transfer to North Carolina, Plaintiff received an evaluation which found his job performance overwhelmingly satisfactory; the single item that was not rated satisfactory was rated a two on a three point scale.

19) However, the hostile work environment and discriminatory treatment experienced by the Plaintiff at the hands of the Defendants and described in Plaintiff's Affidavit, which has been attached as Exhibit A, prevented the Plaintiff from continuing to perform his job responsibilities satisfactorily.

20) Other Mission Directors, including the Plaintiff himself when he served as such for the New England Synod, are not only invited to meetings, projects and retreats but actively participate in those meetings, projects and retreats; however, while

serving as Mission Director for the North Carolina Synod of the Evangelical Lutheran Church in America, Plaintiff was denied attendance at meetings, projects and retreats with staff, Deans, members of the Synod Counsel, and others.

21) Other Mission Directors, including the Plaintiff himself when he served as such for the New England Synod, are provided with private office space where they may conduct sensitive work privately; however, while serving as Mission Director for the North Carolina Synod of the Evangelical Lutheran Church in America, Plaintiff was denied private office space even when offices in the same building sat vacant, and Plaintiff was forced to make sensitive phone calls from the kitchen and supply closet.

22) Other Mission Directors, including the Plaintiff himself when he served as such for the New England Synod, are allowed to present their work plans to the Deans and Synod Counsel; however, while serving as Mission Director for the North Carolina Synod of the Evangelical Lutheran Church in America, Plaintiff was denied all opportunities to present his work plans to the Deans and Synod Counsel.

23) Other Mission Directors, including the Plaintiff himself when he served as such for the New England Synod, may receive work-related phone calls placed to their office; however, while serving as Mission Director for the North Carolina Synod of the Evangelical Lutheran Church in America, Plaintiff's callers were told that he did not work there and were given a wrong phone number to call for the Plaintiff.

24) Additionally, while serving as Mission Director for the North Carolina Synod of the Evangelical Lutheran Church in America, Plaintiff was subjected to comments directed to him such as "[your penis] should have been cut off" (stated by Defendant Bolick) and "[y]ou are out of here, Nigger" (stated by Defendant Tonnesen).

25) On numerous occasions, Plaintiff made the Defendants aware of the above-cited discriminatory actions and of the hostile work environment and of his emotional distress but in each instance the Defendants failed to take action.

26) Plaintiff's physical and mental health declined such that he was forced to seek treatment for both and that too was communicated to the Defendants.

27) Eventually, the discriminatory actions and hostile work environment and emotional distress prevented the Plaintiff from continuing to perform his job satisfactorily as he had in the past as evidenced by his 2007 evaluation.

28) Ultimately, Plaintiff was forced to resign rather than continue to endure the severe discrimination and hostilities and rather than continue to have his health decline in spite of the medical treatment he was receiving.

## FIRST CLAIM FOR RELIEF—RACIAL DISCRIMINATION

29) Paragraphs 1 though 28, inclusive, are incorporated herein by reference as if fully set out herein at length.

30) Plaintiff is an African American man, and therefore a member of a protected class.

31) Plaintiff was qualified for his job as Mission Director of the North Carolina Synod and in fact successfully served in this capacity in the New England Synod for several years before relocating to North Carolina.

32) Plaintiff satisfactorily performed his job responsibilities as Mission Director of the North Carolina Synod as evidenced by his submission of six new congregations and several in the planning stages upon his departure in addition to the work he did to maintain and improve existing groups.

33) Furthermore, the Plaintiff received positive feedback on his work performance from those other than the named Defendants as well as from his evaluation taken in the beginning of work as Mission Director for the North Carolina Synod when the discrimination and hostile work environment had not yet accumulated.

34) The Defendants intentionally called Plaintiff a "Nigger", intentionally made offensive comments about the Plaintiff's penis and laughed at the same, intentionally excluded him from meetings necessary for the Plaintiff to perform his job functions, and intentionally performed each of the discriminatory acts listed above and in Exhibit A; said actions by the Defendants were taken with the intent of forcing the Plaintiff to resign.

35) Based on the Defendants' intentionally discriminatory treatment towards Plaintiff, Plaintiff suffered from the adverse employment action of constructive discharge thereby losing all benefits and salary associated with his employment.

36) Employees junior to the Plaintiff and other Mission Directors outside of the Plaintiff's protected class received more favorable treatment than the Plaintiff received, and Plaintiff himself received more favorable treatment while he worked as Mission Director for the New England Synod.

37) No legitimate, nondiscriminatory reason for the Defendants' racially discriminatory treatment of the Plaintiff exists.

38) Due to the racial discrimination caused by the Defendants and suffered by the Plaintiff, the Plaintiff has suffered damages.

## SECOND CLAIM FOR RELIEF—HOSTILE WORK ENVIRONMENT

39) Paragraphs 1 though 38, inclusive, are incorporated herein by reference as if fully set out herein at length.

40) The Defendants' offending conduct included the calling of the Plaintiff and another African-American a "Nigger", the statement that the Plaintiff's penis should have been "cut off", and the denial of the Plaintiff resources needed by the Plaintiff to perform his job that existed in excess and were not being used by others.

41) The Defendants' offending conduct was unwelcome and intentional as evidenced by the Defendants' continuing to commit the offensive acts and direct them toward the Plaintiff even after the Plaintiff informed them that the actions were offensive and unwelcome.

42) The Defendants' offending conduct was based on the Plaintiff's race.

43) Non-African-American employees were not subjected to the offensive conduct by the Defendants but other African-American employees were subjected to similar offensive conduct as the Plaintiff at the hands of the Defendants.

44) The Defendants' offending conduct was sufficiently severe, pervasive, and frequent such that it altered the terms and conditions of the Plaintiff's employment and created an abusive work environment.

45) The offending conduct of Defendants Magnus, Bolick and Tonnesen are imputable to Defendants the Evangelical Lutheran Church in America and the North Carolina Synod.

46) A reasonable person would find the environment to which the Plaintiff was subjected both hostile and abusive.

47) The Plaintiff in fact found the environment to which he was subjected both hostile and abusive and reported such to the Defendants on numerous occasions.

48) Due to the hostile work environment caused by the Defendants, the Plaintiff has suffered from damages.

### THIRD CLAIM FOR RELIEF—CONSTRUCTIVE DISCHARGE

49) Paragraphs 1 though 48, inclusive, are incorporated herein by reference as if fully set out herein at length.

50) The Plaintiff's working conditions were intolerable such that any reasonable person would have resigned given the totality of circumstances.

51) The Defendants deliberately and intentionally made the Plaintiff's working conditions intolerable through their comments, actions and inactions as set forth above and in Exhibit A.

52) The Defendants continued to deliberately and intentionally make the Plaintiff's working conditions intolerable even after the Plaintiff informed them that they were in deed making his working conditions intolerable.

53) The Defendants' deliberate and intentional acts were intended by the Defendants to force the Plaintiff to resign.

54) The Plaintiff did in fact resign based on the intolerable working conditions.

55) Due to the constructive discharge caused by the Defendants, the Plaintiff has suffered damages.

### FOURTH CLAIM FOR RELIEF—INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

56) Paragraphs 1 though 55, inclusive, are incorporated herein by reference as if fully set out herein at length.

57) The Defendants actions, inactions, comments as set forth above and in Exhibit A, including, but not limited to, calling the Plaintiff a "Nigger" and stating that the Plaintiff's penis should have been "cut off", constitute extreme and outrageous conduct.

58) The Defendants' extreme and outrageous conduct intended to cause the Plaintiff to suffer from emotional distress, and continued even after the Plaintiff communicated to the Defendants that his physical and mental health were suffering because of their extreme and outrageous conduct.

59) Due to the intentional infliction of emotional distress caused by the Defendants, the Plaintiff did in fact suffer from severe emotional distress which manifested as symptoms associated with high blood pressure episodes, inability to sleep, withdrawal, and depression.

60) Plaintiff received treatment for both his physical and mental health from medical professionals but nevertheless continued to suffer.

61) As a result of the intentional infliction of emotional distress caused by the Defendants, the Plaintiff has suffered damages.

### FIFTH CLAIM FOR RELIEF—NEGELIGENT INFLICTION OF EMOTIONAL DISTRESS

62) Paragraphs 1 though 61, inclusive, are incorporated herein by reference as if fully set out herein at length.

63) The Defendants engaged in negligent conduct as described above and in Exhibit A, including, but not limited to, repeatedly ignoring requests by the Plaintiff, repeatedly excluding him from meetings necessary for the performance of his job

tasks, and denying him access to needed resources, which were available in excess.

64) After three years of consistent negligence by all of the Defendants and three years of the Plaintiff protesting to the same, it is reasonably foreseeable that the Plaintiff would suffer from emotional distress.

65) Due to the Defendants' negligent infliction of emotional distress, the Plaintiff in fact suffered from emotional distress in the form of symptoms associated with high blood pressure episodes, inability to sleep, withdrawal and depression.

66) Even the Plaintiff's communication of the impact the Defendants' negligent infliction of emotional distress had on the Plaintiff's physical and mental health, did not lessen the severity or frequency of the Defendants' behaviors.

67) As a result of the negligent infliction of emotional distress caused by the Defendants, the Plaintiff has suffered damages.

WHEREFORE, the Plaintiff respectfully requests that the Court grant the following relief:

1) That the Court find that the Defendants are liable to the Plaintiff for each claim of action and that the Plaintiff is allowed to recover compensatory and punitive damages therefrom in the amount of $5,400,000.00;

2) That the Court hold the Defendants liable for the costs associated with this action;

3) That the Court grant such other and further recovery as it deems just and proper;

4) That all matters be decided by a trial by jury.

This the 18th day of October, 2007.

                                                             /s/
                                                             James N. Rogers
                                                             Attorney for Plaintiff
                                                             NC State Bar Number: 34870

OF COUNSEL:

HUNTER, HIGGINS, MILES, ELAM & BENJAMIN, PLLC
101 West Friendly Avenue, Suite 500
Greensboro, North Carolina 27401
Telephone Number: 336.273.1600
Facsimile Number,: 336.274.4650

CERTIFICATE OF SERVICE

I hereby certify that on 10/18/2007, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

jrogers@greensborolaw.com

and certify that I have mailed the document to the following non CM/ECF participants:

Evangelical Lutheran Church in America
8765 West Higgins Rd.
Chicago, IL 60031

North Carolina Synod
1988 Lutheran Synod Drive
Salisbury, NC 28144

Reverend Richard A. Magnus
Evangelical Lutheran Church in America
EOCM Unit, West Higgins Rd.
Chicago, IL 60031

Bishop Leonard Bolick
North Carolina Synod
1988 Synod Drive
Salisbury, NC 28144

Reverend Philip Tonnesen
North Carolina Synod
1988 Synod Drive
Salisbury, NC 28144

s/James N. Rogers
North Carolina Bar #34870
Attorney for Plaintiff


PLAINTIFF'S EXHIBIT A

UNITED STATES DISTRICT COURT ) 
) AFFIDAVIT
MIDDLE DISTRICT ) 

Now comes the undersigned Affiant, who, being duly sworn, avers and says the following:

1) My name is Reverend Derrick Gomez, and I am a resident of Alamance County, North Carolina.

2) I am over eighteen years of age and am capable in all ways of giving an affidavit.

3) I served as Reverend of the Trinity Lutheran Church in Queens, New York, from 1981 until 1986.

4) I then served as the Reverend of the Church of the Abiding Presence, located in the Bronx, New York, from 1987 until 2002.

5) In March of 2002, I interviewed for the position of Mission Director of the New England Synod of the Evangelical Lutheran Church in America and was told the following day that I had been selected for the position.

6) From 2002 until 2004, I served as the Mission Director of the New England Synod.

7) In 2004, I submitted an application to transfer to the North Carolina Synod of the Evangelical Lutheran Church in America and was subsequently interviewed for the position, but I was informed that due to delays caused by Bishop Bolick's comment that I would not be able to supervise white

pastors, I was not told that I had been selected for the position until three weeks later.

8) From 2004 until 2007, I served as the Mission Director for the North Carolina Synod.

9) My duties as Mission Director of both the New England Synod and the North Carolina Synod were to start new groups and to assist existing groups in their expansion efforts.

10) Though I am an ordained pastor, being such is not required of Mission Directors.

11) From 2004 until 2007, I was discriminated against and subjected to a hostile work environment in the following ways, each of which prevented me from performing my job responsibilities with the North Carolina Synod and none of which occurred during my tenure as the Mission Director for the New England Synod:

    a. I was excluded from weekly staff meetings;

    b. I was excluded from meetings regarding a 20/20 funding project;

    c. I was told by superiors not to attend planning meetings;

    d. I was told by superiors not to attend the Joint Region 9 meetings;

    e. I was given job responsibilities not required of non-African American Mission Directors;

    f. I was not allowed to attend the quarterly meetings;

g. I was denied private office space though as many as two vacancies existed in the building in which I worked;

h. I was forced to make calls regarding sensitive information in the kitchen, mailroom, or the supply closet;

i. I was not allowed to contribute to meeting agendas;

j. Bishop Bolick and Reverend Tonnesen never responded to my verbal work plan;

k. Bishop Bolick never met with me privately even when discussing sensitive information affecting no employee other than myself;

l. I was denied an opportunity to present my work plan to the Synod Counsel though pastors junior to me were allowed to do so;

m. I was denied an opportunity to present my work plan to the Deans though pastors junior to me were allowed to do so;

n. I was yelled at by Reverend Tonnesen, for being ten minutes late to a meeting, when no others in my entire tenure were yelled at for being late, including Bishop Bolick when he arrived one hour and forty-five minutes late for a meeting with no explanation or apology;

o. When sharing with Bishop Bolick about my recovery from prostate cancer, Bishop Bolick said while laughing, "It should have been cut off" at which Reverend Tonnesen laughed as well;

p. I was not allowed to participate in leadership selection though pastors junior to myself were allowed to do so;

q. I was not included in staff retreats;

r. I was not receiving my phone calls because the North Carolina Synod gave all of my callers the wrong phone number and the receptionist would tell callers that I did not work there;

s. I was not able to get prompt approvals for minorities that I proposed but was for the white groups, and in one instance even after approved, I was told that an African-American group would have to be reviewed further, which is a violation of policy;

t. I was personally told by Reverend Tonnesen, "[y]ou are out of here, Nigger", and promptly informed Bishop Bolick and Reverend Magnus of the same, but both declined to take any actions; I was told that Reverend Tonnesen also called Reverend Clark, an African-American man, a "nigger";

u. At all meetings in Chicago, I told Reverend Magnus about the intolerable conditions in the workplace, and only one time did he respond by offering to meet with me, Bishop Bolick and Reverend Tonnesen, but Bishop Bolick arrived one hour and forty-five minutes late, and the meeting was concluded after only fifteen minutes with none of the issues resolved and only barely discussed;

v. Upon being told that I should integrate my job duties differently, I requested clarification from Reverend Magnus, who told me to

contact Bishop Bolick, which I did, but Bishop Bolick failed to respond;

w. Reverend Tonnesen and Reverend Magnus complained of my work to others but not to me denying me an opportunity to explain their misunderstandings and make improvements where necessary;

x. My supervisor, to whom I am required to report updates, was changed without anyone informing me for several months; and

y. On three occasions I wrote my supervisor to request an explanation of an evaluation but did not receive a response to any of the requests.

12) The above-listed discriminatory actions were in spite of my repeated and frequent written and verbal complaints of the same to Reverend Magnus, Bishop Bolick, and Reverend Tonnesen beginning in 2005 and continuing through 2007.

13) Reverend Magnus, Bishop Bolick, and Reverend Tonnesen did not respond to my complaints either directly or through their inferiors nor did they take any actions to lessen the discriminatory actions to which I was subjected on a daily basis.

14) In spite of my repeated and frequent attempts to discuss these issues with my superiors and in spite of their complete lack of response to these requests, my most recent evaluation stated that *I* needed to improve *my* communication.

15) I do not know of any white employees who were similarly excluded and mistreated as set forth above.

16) Because of the discriminatory treatment, I suffered from intense feelings of depression and hopelessness, and therefore I sought regular treatment for the same from a psychologist.

17) Reverend Magnus, Bishop Bolick, and Reverend Tonnesen were told of the affect my work situation had on my psychological health.

18) In regards to my physical health, I suffered from high blood pressure and related symptoms during the time I was receiving the discriminatory treatment and sought treatment for the same.

19) Similarly, Reverend Magnus, Reverend Bolick, and Reverend Tonnesen were told of the affect my work situation had on my physical health.

20) Based on the above-cited experiences, I was forced to resign effective April 15, 2007.

21) On April 24, 2007, I wrote Bishop Bouman to request consideration for the position as Reverend of the Church of the Abiding Presence, which was vacant; in spite of my successfully serving in this capacity at this very church for years and in spite of recommendations by several congregants, I was denied the position. Furthermore, my inquiries about this position directed to Bishop Bouman directly and through his assistants were ignored.

22) I know of other African-American employees who have been similarly discriminated against by the Evangelical Lutheran Church of America and the North Carolina Synod, and know of no non-African-American employees who have been similarly mistreated.

This the 18th day of October, 2007.

*Rev Demicus Gomez*
Reverend Derrick Gomez

Sworn to and subscribed before me
This the 16th day of October, 2007.

_____
Notary Public

CHARMAINE M. STEWART
Notary Public, State Of New York
No. 02ST5000525
Qualified In Nassau County
Commission Expires 08/17/20 10